STATE EX REL. MITSUBISHI HEAVY INDUSTRIES AMERICA, INC., Petitioner,

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY, The Honorable Dominic S. Amato, presiding, Travelers Property Casualty Insurance Company, The Travelers Indemnity Company of Illinois, Neil F. Lampson, Inc., HCH Miller Park Joint Venture, Hunzinger Construction Company, Clark Construction Builders, Inc., Huber, Hunt & Nichols, Inc., The Milwaukee Journal Sentinel, Inc., Patricia Wischer, individually, and as Special Administrator of the Estate of Jeffrey A. Wischer, deceased, Marjorie DeGrave, individually and as Special Administrator of the Estate of William R. DeGrave, deceased and Ramona Dulde-Starr, individually and as Special Administrator of the Estate of Jerome W. Starr, deceased, Respondents.

STATE EX REL. MITSUBISHI HEAVY INDUSTRIES AMERICA, INC., Petitioner,

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY, The Honorable Dominic S. Amato, presiding, Patricia Wischer, Marjorie DeGrave, Ramona Dulde-Starr, Travelers

1

Property Casualty Insurance Company, The Travelers Indemnity Company of Illinois, Neil F. Lampson, Inc., HCH Miller Park Joint Venture, Hunzinger Construction Builders, Inc., Huber, Hunt & Nichols, Inc., The Milwaukee Journal Sentinel, Inc. and Hearst Argyle Television, Inc., Respondents.

Supreme Court

*Nos. 99–2810–W, 99–3110–W. Oral argument December 14, 1999.—Decided February 23, 2000.*

2000 WI 16

(Also reported in 605 N.W.2d 868.)

For the petitioner there was oral argument by *Ralph A. Weber* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, SC.*, Milwaukee.

For the respondent, The Milwaukee Journal Sentinel, Inc., there was oral argument by *John A. Busch* and *Michael, Best & Friedrich*, Milwaukee.

¶ 1. PER CURIAM. Mitsubishi Heavy Industries America, Inc. (Mitsubishi) petitions this court to issue a supervisory writ directed to the Circuit Court for Milwaukee County, the Honorable Dominic Amato

3

presiding. Mitsubishi challenges the circuit court's order dated October 29, 1999, which permitted the Milwaukee Journal Sentinel, Inc. (MJS) to intervene in the underlying negligence action. The order directed, among other things, that the parties "in possession of any deposition, transcript, deposition videotape or related exhibits. . .provide copies of such materials upon request of Journal Sentinel Inc."[1]

¶ 2.  The dispositive issue in this case is whether the circuit court erred in permitting MJS to intervene in this action and directing that MJS have access to unfiled, pretrial discovery materials the parties and their attorneys may have in their possession. We conclude that the Milwaukee Journal Sentinel, Inc. should not have been permitted to intervene as a matter of right to obtain access to unfiled, pretrial discovery materials. Accordingly, we grant this petition for supervisory writ.

¶ 3.  On July 14, 1999, three ironworkers were killed when a construction crane collapsed while lifting a section of the retractable roof for the new stadium being constructed at Miller Park in Milwaukee. Subsequently, on August 12, 1999, the widows of the three deceased iron workers (plaintiffs) brought suit against Mitsubishi Heavy Industries America, Inc., the subcontractor for the construction of the retractable roof,

---

[1] In addition to this petition for supervisory writ, Mitsubishi also simultaneously filed a petition for review of a court of appeals' November 23, 1999 decision denying its request for supervisory relief. Because this court now grants the petition for supervisory relief, Mitsubishi's alternative petition for review is unnecessary and is therefore dismissed. *State ex rel. Newspapers v. Circuit Court*, 124 Wis. 2d 499, 504 n. 2, 370 N.W.2d 209 (1985).

and other entities alleging claims of negligence as well as claims for punitive damages.

¶ 4.   The plaintiffs then served deposition subpoenas on five employees of Mitsubishi and scheduled oral, videotaped depositions of those employees beginning in the second week of October, 1999.

¶ 5.   On October 1, 1999, Mitsubishi filed a motion in the circuit court seeking a protective order pursuant to Wis. Stat. § 804.01(3),[2] and a stay of the depositions of its five employees until investigations by the Milwaukee County District Attorney's Office and Occupational Safety and Health Administration (OSHA) had concluded and the possibility of criminal prosecution had passed. The circuit court, after a hearing, imposed what it referred to as a "gag order" directing that the depositions of the five Mitsubishi employees be sealed, that the parties and their attorneys be subject to the gag order and not reveal to the public or press the contents of those depositions, and that the gag order remain in effect for 30 days after the employees' depositions were completed after which Mitsubishi would have to demonstrate that the depositions of the five employees should remain sealed.

¶ 6.   At a subsequent scheduling conference held on October 15, 1999, the court explained that the gag order remained in place with respect to the depositions of the five Mitsubishi employees, but that the order did not apply to any other depositions. The court reiterated that the gag order would not remain in place indefi-

---

[2] Wisconsin Stat. § 804.01(3) provides in pertinent part:

**(3) Protective Orders.** (a) Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

nitely, but that within 30 days after the depositions of the five Mitsubishi employees had been completed, the gag order would be lifted unless Mitsubishi gave sufficient reasons why the order should remain in effect.

¶ 7.  On October 18, 1999, the scheduled deposition of an employee of Neil F. Lampson, Inc., the lessor of the crane and one of the named defendants in the underlying action, was held. A representative from MJS appeared at that deposition and requested that he be allowed to attend and be given copies of the transcript. Because there was confusion and disagreement between the parties about the extent of the court's gag order, this request was denied and MJS's representative was told to seek court permission to gain access to the depositions.

¶ 8.  The next day, October 19, 1999, MJS filed a motion in the circuit court to intervene as a matter of right in the underlying action pursuant to Wis. Stat. § 803.09(1). MJS claimed that it had a right to intervene for the purpose of protecting the public's interest in disclosure of the discovery proceedings. MJS also sought clarification of the existing gag order, review of the documents sealed by the circuit court, release of the videotapes and transcripts of depositions, and the right to attend or view other depositions.

¶ 9.  Mitsubishi opposed these requests asserting that Wisconsin law does not give the public a right to examine before trial depositions or discovery materials and therefore, MJS had no right to intervene in the underlying circuit court action. Mitsubishi also asserted that media representatives have no right to attend depositions. Noting that the existing gag order only applied to the depositions of its five employees, Mitsubishi maintained that there was "good cause" for such order. Mitsubishi asked the court to deny MJS's

6

motions; however, Mitsubishi did not ask the circuit court for affirmative relief in the form of a new protective order pursuant to Wis. Stat. § 804.01(3) to apply to discovery and depositions of individuals other than its five employees.

¶ 10.   At the October 21, 1999 hearing on the motions, MJS's attorneys clarified that the newspaper was not contesting the existing gag order insofar as it related to the depositions of the five Mitsubishi employees; according to MJS, it wanted the gag order clarified so that lawyers for the parties would not be prevented from voluntarily discussing with MJS's representatives their theories and the facts of the case. Furthermore, MJS asserted it wanted access to the transcripts and videotapes of individuals other than the five Mitsubishi employees, and MJS wanted the right to attend the depositions if invited by any of the parties.

¶ 11.   Mitsubishi reiterated its opposition and again asserted that members of the media have no right to attend discovery depositions in civil actions, nor does the media have a right of pretrial access to discovery materials, including deposition transcripts, until those transcripts are filed with the court.

¶ 12.   The circuit court explained that the only gag order in effect in this matter related to the depositions of the five Mitsubishi employees. Then the court ruled that the press had a right of access to information obtained in the course of discovery proceedings and that the only way such access could be denied would be if a timely motion for protective order were brought.[3]

---

[3] In the oral ruling from the bench, the court stated:

based upon the request of the press, I'm going to allow them access to all papers except the current gag order on the five Mitsubishi

¶ 13. The circuit court's oral ruling was subsequently reduced to written form and entered on October 29, 1999. That October 29th order, which is the subject of this petition for supervisory writ, provides:

1. Journal Sentinel Inc. has the right to intervene for the limited purpose of establishing its interest relative to the requested relief, but the Journal Sentinel Inc. is not to be a formal party to this action.

2. Parties in this action in possession of any deposition, transcript, deposition videotape or related exhibits, except for those of the five employees of Mitsubishi. . .are to provide copies of such materials upon request of Journal Sentinel Inc. The cost of providing the materials shall be borne by Journal Sentinel Inc.

3. No gag order exists on any party or counsel regarding this case except on such information that is directly related to the testimony of the five employees of Mitsubishi. . . .

4. This order does not require any attorney to provide copies of their work product.

---

depositions, with the sunset date, knowing if they don't come in and ask for relief, there'll also be access to those depositions.

The lawyers who hold these depositions are custodians of public records of the court in this civil action. You're going to have to make available those depositions and documents upon reasonable time, upon reasonable notice, upon reasonable request. And the party requesting will have to bear all the expense.

There is no gag order preventing anybody from talking to anyone else. . . .

So outside of the video depositions of the Mitsubishi employes. . .that is the only gag order in effect.

. . .

That it's the judgment of this court, under First Amendment protections, because this is a public forum, and these documents are public records, that those documents held by the lawyers in the form of depositions can be accessed by anyone, at their expense, upon reasonable notice and paying for reasonable costs.

8

5. Upon the invitation of the host of a deposition, a representative of Journal Sentinel, Inc. may attend or contemporaneously view, but may not participate in, any deposition. . . .If a party opposes the viewing, the party in opposition may bring a motion before this court to show good cause for protection.

¶ 14. Mitsubishi thereafter filed a petition for supervisory writ in the court of appeals asking that the circuit court be prohibited from enforcing the October 29th order. On November 23, 1999, the court of appeals denied Mitsubishi's petition for supervisory relief. The court of appeals distilled Mitsubishi's arguments to two primary contentions: (1) MJS does not meet the criteria for intervention under Wis. Stat. § 803.09; and (2) deposition transcripts, videotapes and exhibits that are not yet on file in the circuit court are not court records and as such are not subject to court ordered release.

¶ 15. With respect to Mitsubishi's challenge to allowing MJS to intervene, the appellate court agreed with Mitsubishi's argument that the two primary cases relied on by MJS to support its intervention request, *State ex rel. Bilder v. Delavan Tp.*, 112 Wis. 2d 539, 334 N.W.2d 252 (1983), and *C.L. v. Edson*, 140 Wis. 2d 168, 409 N.W.2d 417 (Ct. App. 1987), were distinguishable because those cases involved a newspaper's request for access to court documents after settlement of the underlying litigation. In contrast, MJS's intervention request in this case sought access to pretrial discovery materials generated by the litigation but not yet on file in the circuit court. Nevertheless, the appellate court concluded that Mitsubishi had not met the stringent standards for supervisory relief because there was no showing by Mitsubishi that the circuit court's decision

permitting MJS limited intervention for the purpose of obtaining access to pretrial discovery documents plainly violated a clear legal duty. *Dressler v. Racine County Circuit Court*, 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991).

¶ 16.  With respect to Mitsubishi's second argument—that discovery depositions not yet on file in the circuit court are not court records to which the court may grant access—the court of appeals again noted that there was no controlling statute or case law stating that such materials are not court records and cannot be released to an intervening party. Describing Mitsubishi's arguments as raising an "interesting legal theory," the court of appeals nonetheless concluded that Mitsubishi had not demonstrated that the circuit court had violated clear controlling authority. Therefore, the court held that supervisory relief was unavailable.[4]

¶ 17.  Mitsubishi then filed with this court a petition for supervisory writ and an alternative petition for review of the court of appeals' November 23, 1999 decision. Mitsubishi's request to stay the effect of the October 29th circuit court order and the November 23rd court of appeals' decision was granted until further order of this court, and MJS was ordered to respond to Mitsubishi's petition for supervisory relief. This court has now heard oral argument on the petition and response. For the reasons explained below, we grant Mitsubishi's petition for supervisory relief concluding, after a de novo review, *Bilder*, 112 Wis. 2d at 549, that MJS should not be permitted to intervene in the underlying action for even the limited purpose of

[4] The court of appeals also denied Mitsubishi's alternative request that it be granted permissive appeal of the court of appeals' October 29th order.

seeking access to pretrial discovery material. We emphasize that this is a right of access case, not a right to disseminate case, and we hold that neither the public nor the press have either a common law or First Amendment right of access to unfiled pretrial discovery materials which remain in the custody and control of the parties to the litigation.

## ACCESS TO DISCOVERED INFORMATION

### The Common Law

■■■■

¶ 18.    Neither the press nor the public have a common law right to examine discovery materials as they are being generated in the course of pretrial discovery in a civil action. The access rights of news media and the general public are identical in scope. *Estes v. Texas*, 381 U.S. 532, 540 (1965); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978); *City of Oak Creek v. King*, 148 Wis. 2d 532, 549, 436 N.W.2d 285 (1989). While the press and the public jointly possess a common law right to inspect and copy judicial records and public documents, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L. Ed. 2d 570 (1978); *Bilder*, 112 Wis. 2d at 546; *C.L. v. Edson*, 140 Wis. 2d at 177; Wis. Stats. §§ 19.32(1) and 59.20(1); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 677, 137 N.W.2d 470 (1965), this court has never held that private documents collected during discovery are "judicial records;" in fact, there is substantial case authority to the contrary. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *In Re Alexander Grant and Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987); *Anderson v. Crayovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986). Although the case law refers to a common law

presumption that the public and media may inspect judicial records, generally that presumption extends only to documents which have been filed with the court such as pleadings, *Bilder*, 112 Wis. 2d and settlement agreements, *Edson*, 140 Wis. 2d. The common law right of access does not extend to information collected through discovery which is not a matter of public record. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

¶ 19.   Documents on file with a court or custodian may be considered public records. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 279 N.W.2d 179 (1979) (daily arrest records are public documents within the public records statute); *Bilder*, 112 Wis. 2d and *Edson*, 140 Wis. 2d. Some cases have held, however, that even documents that have been filed with the court are not necessarily included within the scope of the common law presumption of access unless such documents have been relied on in determining the litigant's substantive rights. *In Re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325 (D.C. Circuit 1985) (Scalia, J., writing for court and Wright, J., dissenting, agree that the common law presumption of access does not go beyond evidentiary materials used in determining the litigant's substantive rights). Some cases have even held that the public's right of access extends only to materials considered by the court when ruling on dispositive pretrial motions, *Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984); *Joy v. North*, 692 F.2d 880 (2d Cir. 1982). That is not the situation here. The discovery materials sought—and which the circuit court granted MJS almost unrestricted access to—have not yet been filed nor used in any pretrial motions or rulings implicating the par-

ties' substantive rights; in fact, the circuit court's order operates for the most part *in futuro* since the discovery process in the recently filed underlying action has only just begun.

¶ 20.   In this state, unless otherwise ordered, the original copies of all depositions and other discovery materials are not filed in the circuit court but instead are retained by the party who initiated the discovery or that party's attorney. Wis. Stat. § 804.01(6).[5] The circuit court never ordered that any depositions, either those already taken or those to be taken in the future, will be filed in court; consequently, the depositions obtained during pretrial discovery in the underlying action presumably will be retained by the party initiating the discovery procedures. The person before whom the depositions are taken must "securely seal" them and promptly serve the depositions upon the party or attorney requesting them, giving notice of the service to all parties and the court. Section 804.05(7). Upon payment of reasonable charges, a copy of the deposition shall be furnished to "any party or to the deponent." Wis. Stat. § 804.05(7)(c). Based on this statutory scheme, we conclude the depositions generated in the pretrial discovery proceedings in the underlying action are not judicial records to which a common law presumption of access applies because they have not yet been filed in court, nor have they yet been used as evidentiary material in determining any of litigants'

---

[5] The statutory provisions dealing with videotapes of depositions are similar but not identical. For example, Wis. Stat. § 885.46 requires that the official before whom the videotape deposition is taken must maintain a secure and proper storage of the original videotape. Like transcripts, videotape depositions are not required to be filed in court. *1988 Judicial Council Note* to Wis. Stat. § 885.43.

substantive rights. As long as these materials remain in the possession of the parties and have not yet been filed or even used in court, they remain the private, personal property of the litigants to which neither the media nor the public have a common law right of access.

## First Amendment Right of Access

¶ 21.   Most of the cases addressing the issue of the public's or media's right of access—either common law or First Amendment—to pretrial discovery material arise in the context of a challenge to a protective order that has been issued, the effect of which is to seal the discovery materials from public examination. The instant case presents the converse of that situation: here the circuit court did not issue a protective order but rather issued what amounts to a blanket order compelling the parties and their attorneys to provide MJS with access to not only existing discovery materials in the possession of any of the parties, but apparently also to any such discovery materials to be generated in the future. In analyzing the appropriateness of such an order, the distinction must be maintained between the media's First Amendment right to disseminate information acquired during a trial, and the media's right to access information generated in a pretrial discovery context. The instant case involves private litigants conducting pretrial discovery in preparation for a trial on a tort claim. Although MJS contends that the discovery materials in this case are public documents because they have been generated in a lawsuit brought in the state court system involving a large public works project funded by public tax monies, this is, in the final analysis, a civil dispute between private litigants. As in *Seattle Times*, here there is no

14

governmental entity or public official who is currently an active party to this litigation. There are no allegations that public funds are in jeopardy in this lawsuit. The underlying case is a tort action brought by private plaintiffs against a corporate entity; public issues and concerns are not in dispute. The fact that this case arose from an accident at a public works project and has generated a great deal of publicity is not enough to transform this into the type of public controversy in which all documents are imbued with "public record" status.

¶ 22.   In *Seattle Times*, the U.S. Supreme Court stated that "pretrial depositions and interrogatories are not public components of a civil trial." *Id.* 467 U.S. at 33 (footnote omitted). The court recognized that "[s]uch proceedings were not open to the public at common law. . . ." *Id.* Chief Justice Burger writing separately in another case asserted that "it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants." *Gannett Company v. DePasquale*, 443 U.S. 368, 396 (1979). The same is true with respect to the discovery materials at issue here. These are "wholly private to the litigants."

¶ 23.   The issue in *Seattle Times* focused on the freedom of the press to publish pretrial discovery information rather than, as here, on the press's right of access to such information; nevertheless, that case is instructive. In *Seattle Times*, the newspaper was actually a defendant in a defamation action brought by Rhinehart, a leader of a religious group; the question was whether the newspaper could publish information it had gathered through the pretrial discovery process in the course of that civil litigation. The state trial court granted Rhinehart a protective order prohibiting

15

the newspaper from disseminating information obtained in the discovery process; that order, however, did not apply to information gained through means outside of the discovery process. The protective order issued in *Seattle Times* was based on Washington's Civil Rule 26(c), which is almost identical to Wis. Stat. § 804.01(6).

¶ 24. In *Seattle Times*, the United States Supreme Court viewed the crucial issue as being whether a protective order precluding the newspaper from disseminating information gathered during the pretrial discovery process was an infringement on that party's First Amendment rights. The Court concluded it was not. Important to the Court's analysis was the fact that the Washington discovery rules (like ours, Wis. Stat. § 804.01(2)(a)) provide for liberal discovery, not limited to matters that will be admissible at trial; the rules only require that the information sought to be discovered is "not privileged," is "relevant" and appears "reasonably calculated" to lead to the discovery of admissible evidence. The Court pointed out that much of the information brought forth during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action and that the discovery rules often allow extensive intrusion into the private affairs of both litigants and third parties. *Seattle Times*, 467 U.S. at 30–33. Commenting on the private nature of the pretrial discovery process, the Court in *Seattle Times* stated that "pretrial depositions and interrogatories are not public components of a civil trial." *Id.* at 33 (footnote omitted). Further, the Court noted that discovery rarely takes place in public and depositions are scheduled at times and places most convenient to those involved and that interrogatories are answered in private. *Id.* at 33, n.19.

¶ 25. In light of these factors, the United States Supreme Court in *Seattle Times* stated that restraints placed on discovered, but not yet admitted, information do not amount to a restriction on a traditionally public source of information. *Id.* Accordingly, because of the unique character of the discovery process, trial courts have substantial latitude to fashion protective orders. *Id.* at 36. Therefore, the court held "that where. . .a protective order is entered on a showing of good cause. . .is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37 (footnote omitted). The protective order in that case which prohibited the newspaper from disseminating discovered information before trial was not the kind of classic prior restraint that required an exacting First Amendment scrutiny. *Id.* at 33.

¶ 26. As noted, the instant case is not a restriction on the media to disseminate discovery information: Mitsubishi never asked for, and the circuit court never entered, a protective order (except for the gag order relating to the five Mitsubishi employees which is not challenged in this court). Instead, this case involves the issue of whether MJS has a right of access to the discovery documents currently in possession of the private litigants in this case. We have already concluded that there is no common law right of access to such discovery documents especially because they have not been filed in the circuit court nor have they been used to determine any substantive rights of the parties. We also hold, for the reason suggested by the U.S. Supreme Court's analysis in *Seattle Times*, that neither the media nor the public have a First Amend-

17

ment right to have access to such pretrial discovery materials.

¶ 27. The District of Columbia Circuit Court of Appeals in *Reporters Comm. for Freedom of the Press*, 773 F.2d 1325 (1985) addressed the issue of whether there was a First Amendment right to court records of civil proceedings. The court identified and analyzed the two-prong test utilized for determining whether the public has a First Amendment right of access to judicial proceedings: (1) whether the proceeding has historically been open, and (2) whether the right of access plays an essential role in the proper functioning of the judicial process and the government as a whole. Id. at 1331. Both those questions have to be answered affirmatively before a constitutional requirement of access could be imposed. *Id.* Judge Scalia, writing for the District of Columbia Circuit Court of Appeals, exhaustively examined historical tradition but found no clear, long-established historical practice that would support the pronouncement of a constitutional rule precluding courts from treating the records of private civil actions as private matters until trial or judgment. Then, applying a functional analysis to the issue of whether media access to pretrial discovery materials plays an essential role in the proper functioning of the judicial process, the court concluded that the press had no constitutional right of access to pretrial discovery materials until such materials had been *admitted* into evidence. Judge Scalia read *Seattle Times* and Chief Justice Burger's observation in *Gannett Co. v. DePasquale*, 443 U.S. at 396, that pretrial depositions and interrogatories are "wholly private to the litigants," as recognizing that the *admission* of evidence is the "touchstone" of a First Amendment right to public access. 773 F.2d at 1338. In other words, Judge

Scalia believes there is no right of public access to discovery materials until such materials are actually admitted at trial. The court went even further and held that until final judgment is entered, the district court could, without violating the First Amendment, categorically refuse to grant the press access to pretrial discovery materials. Specifically, the appeals court said that the press had no First Amendment entitlement to a document-by-document determination of the need for a protective order prior to the entry of the final judgment. *Id.* Moreover, the court reasoned that a document-by-document justification for ordering trial exhibits to be sealed would be "simply unworkable" and "utterly infeasible." *Id.*

¶ 28. In the instant case, the circuit court's suggestion that the parties have the burden to file motions for protective relief on a case-by-case or deposition-by-deposition basis would be subject to this same criticism: it is "simply unworkable" because of the burden it would impose on the circuit court, especially in a case where it is likely that the discovery process will be prolonged and extensive.

¶ 29. The circuit court permitted MJS to intervene in this action for the limited purpose of obtaining access to the pretrial discovery material, not yet filed in the circuit court and much of which has not yet even been generated. According to the court, the lawyers holding these depositions and discovery materials are "custodians of public records." From that premise, the circuit court found that MJS had a protectable legal interest permitting its intervention as a matter of right under Wis. Stat. § (Rule) 809.03 to obtain access to these materials. For the reasons discussed above, we conclude this goes too far. We hold that unfiled, pretrial discovery materials generated in a civil action between

private parties are not public records and that neither the public nor MJS has either a common law or First Amendment right of access to such materials.[6]

¶ 30.   Because MJS has no common law or First Amendment right of access to the pretrial discovery materials it sought in this case, the circuit court erred in permitting MJS to intervene and erred in ordering the parties and their attorneys to provide copies of such materials upon request to MJS. We deem the broad scope of the circuit court's October 29, 1999 order to be a violation of the circuit court's plain duty and of plain principles of law; accordingly, the petitioner has made a sufficient showing to justify supervisory relief. *See State ex rel. Beaudry v. Panosian,* 35 Wis. 2d 418, 426, 151 N.W.2d 48 (1967) and *State ex rel. Newspapers v. Circuit Court,* 124 Wis. 2d at 513. Therefore, we grant Mitsubishi's petition for a supervisory writ to prohibit the circuit court from enforcing its October 29, 1999 order; we vacate the stay previously entered by this court on December 7, 1999, and we dismiss the petition for review in Case No. 99–2810–W. We direct that further proceedings in this matter shall be conducted in accordance with this opinion.

---

[6] We express no opinion concerning whether the parties may release to the media any depositions and discovery material the parties or their attorneys may have in their possession. Wis. Stat. § 804.01(6). We only hold that the circuit court may not compel the parties or their attorneys to provide the media with access to such unfiled pretrial discovery materials. Accordingly, we vacate the stay previously entered in this matter which had the effect of precluding the parties or their attorneys from voluntarily providing the media with access to discovery materials.

¶ 31. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. The majority opinion's holding is very narrow: "We hold that *unfiled*, pretrial discovery materials generated in a civil action between private parties are not public records and that neither the public nor MJS [Milwaukee Journal Sentinel] has either a common law or First Amendment right of access to such materials." Majority op. at ¶ 29 (emphasis added). The majority repeatedly states its holding that the circuit court erred as a matter of law in providing the media with access to *unfiled* pretrial discovery material because access to *unfiled* pretrial discovery material is not protected by common law or the First Amendment. Majority op. ¶¶ 2, 17, 20, 26, 29 and n.5 (emphasis added).

¶ 32. I can accept this narrow holding even though it elevates form over substance. In this case the circuit court did not order the depositions in question to be filed in circuit court as is the court's prerogative under Wis. Stat. § 804.01(6) (1997–98).[1] The circuit court did, however, exercise control over the depositions and in effect, ordered them filed and then released to the parties with instructions.

¶ 33. As a result of the majority opinion, if the Milwaukee Journal Sentinel still wants access to the depositions, it should begin again in the circuit court. The newspaper should, as it did in this matter, move to intervene in the action for the limited purpose of seeking access to pretrial depositions. It should request the circuit court to order the depositions filed in circuit court and to authorize the newspaper to have access to

---

[1] The Milwaukee Journal Sentinel does not assert in this court a right to sit in on depositions. Rather, the newspaper seeks affirmation of the circuit court's order that deposition transcripts be provided to the newspaper.

the depositions.[2] The circuit court may, in its discretion, then order release of all, part or none of the depositions filed in court. Judicial restriction on access to pretrial discovery material is valid, when good cause is shown, such as potential harm to commercial, economic, privacy or reputational interests of parties or nonlitigants and the possible prejudice to the parties' fair trial rights. Wisconsin Stat. § 804.01(3) directs the circuit court to balance these concerns and to issue protective orders when appropriate.[3] The circuit court's exercise of discretion balances two competing principles fundamental to pretrial discovery: (1) The public at large pays for the courts; discovery is governed by the courts; the public has an interest in all stages of a judicial proceeding; and the subject of some cases involves a public interest; and (2) Pretrial discovery, unlike the trial itself, is usually conducted in private; the scope of discoverable information is broad, including material that cannot be introduced into evidence at trial; and pretrial discovery is designed for the party receiving it, not for strangers to the case.

---

[2] A motion to intervene for a limited purpose is the appropriate procedure. *See, e.g., In re NASDAQ Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 350–51 (S.D.N.Y. 1996).

[3] The circuit court exercised its discretion in this case. Mitsubishi failed to seek a protective order, even when the circuit court invited such a request.

Wisconsin Stat. § 804.01(3) provides:

> Protective orders. (a) Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including but not limited to one or more of the following...

I

¶ 34. The circuit court has express authority to order the depositions in question in the present case to be filed with the court. Wisconsin Stat. § (Rule) 804.01(6) provides that the original copies of pretrial discovery material shall be retained by the party initiating the discovery *"unless the court in any action orders otherwise"* (emphasis added).[4]

¶ 35. This reading of Wis. Stat. § (Rule) 804.01(6) conforms to the historical development of the rule. Until 1986 deposition transcripts were filed with the circuit court immediately after they were taken. Wis. Stat. § 804.05(7)(a) (1983–84).[5] The deposition became part of the court record and apparently was available to the public pursuant to Wis. Stat. § 59.14 (1983–84), subject to statutory and common law limitations on public access.[6]

---

[4] Wisconsin Stat. § 804.01(6) (1997–98) states:

(6)   Custody of discovery documents. (a) Unless the court in any action orders otherwise, the original copies of all depositions, interrogatories, requests for admission and responses thereto, and other discovery documentation shall be retained by the party who initiated the discovery or that party's attorney.

(b)   The original copy of a deposition shall be retained by the attorney sealed as received from the person recording the testimony until the appeal period has expired, or until made a part of the record.

[5] Wisconsin Stat. § 804.05(7)(a) (1983–84) stated in part:

The person [who recorded the deposition] shall then securely seal the deposition in an envelope indorsed with the title of the action and marked "Deposition of (here insert the name of the deponent)" and shall promptly file it with the court in which the action is pending. . . .

[6] For a discussion of limitations, *see C.L. v. Edson*, 140 Wis. 2d 168, 180–82, 409 N.W.2d 417 (Ct. App. 1987).

¶ 36.   In 1986, pursuant to Supreme Court Order, Wis. Stat. § (Rule) 804.01(6) was created to provide that pretrial discovery material is retained by the parties rather than filed in circuit court unless the circuit court orders otherwise. The drafting file for the newly created Wis. Stat. § 804.01(6) demonstrates that the only reason for the change was to ease the filing burden on the circuit courts and their clerks.[7] The 1986 amendment does not alter the nature of the deposition transcripts, which are documents that are under the custody and control of the circuit court.

¶ 37.   This reading of Wis. Stat. § (Rule) 804.01(6) is consistent with Federal Rules of Civil Procedure 5(d), which is the model for Wisconsin's analogous § 804.01(6).[8] Rule 5(d) states that discovery papers required to be served shall be filed with the district court unless the district court orders otherwise for discovery material. Local rules in many federal district courts provide, as does Wis. Stat. § 804.01(6), that discovery material need not be filed with the district court except by order of the district court. The federal Advisory Committee notes that accompany Rule 5(d) and a

---

[7] *See* Drafting File for Wis. Stat. § 804.01(6).

[8] Wisconsin Stat. § 804.01(3)(a) (regarding protective orders) is comparable to Federal Rules of Civil Procedure Rule 26(c); Wis. Stat. § 804.01(6) is comparable to Federal Rules of Civil Procedure Rule 5(d).

Rule 5(d) provides:

Filing; Certificate of Service. All papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court within a reasonable time after service, but the court may on motion of a party or on its own initiative order that depositions upon oral examination and interrogatories, requests for documents, requests for admission, and answers and responses thereto not be filed unless on order of the court or for use in the proceeding.

proposed amendment to change Rule 5(d) to read like § 804.01(6) state the Committee's rationale clearly: Rule 5(d), the proposed amendment and the local rules embody the Committee's concern that discovery material may be of interest to nonparties and that the general public should be afforded access to discovery material whenever possible.[9]

¶ 38.   Thus the fact that the depositions are now retained by parties pursuant to Wis. Stat. § (Rule) 804.01(6) does not change the circuit court's control over the depositions and the circuit court's power to order them filed in court.

## II

¶ 39.   The majority opinion does not address under what circumstances a nonparty may have access to depositions filed in circuit court. The majority opinion merely holds that common law and the First Amendment do not require public access to <u>unfiled</u> pretrial discovery material.

¶ 40.   I need not discuss the common law or First Amendment rights to public access of pretrial discovery material that is filed in court. The Wisconsin rules set forth in Wis. Stat. ch. 804 relating to discovery govern public access to filed pretrial discovery material. The rules recognize that private litigants have protectable interests in information disclosed through discovery and afford means for protecting those interests. Public access is not permitted when good cause is

---

[9] See *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 788–90 (1st Cir. 1988); *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145–47 (2d Cir. 1987); *In re NASDAQ Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 354 (S.D.N.Y. 1996); *Hawley v. Hall*, 131 F.R.D. 578, 581–83 (D. Nev. 1990).

25

shown to close access. Wisconsin Stat. § 804.01(3)(a), like Federal Rule of Civil Procedure Rule 26(c),[10] provides in pertinent part that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Thus a party may seek a protective order to limit access to pretrial discovery material if the party shows good cause. "[T]he obverse also is true, i.e. if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection."[11] In other words, unless the public has access to discovery material under the law, a party would not need a court order seeking to protect the material.[12]

---

[10] Rule 26(c) provides:

Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following. . . .

[11] *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145 (2d Cir. 1987).

[12] *See also* Wis. Stat. § 885.44(13)(a) regarding videotaped depositions, which expressly provides that a copy of a videotaped deposition or a written transcript or audio recording shall be provided to any party or other person authorized by the court.

## III

¶ 41.   I conclude that Wis. Stat. §§ (Rules) 804.01(3) and 804.01(6) permit a person, including the media, to intervene in an action for the limited purpose of asking the court to order pretrial discovery material to be filed in the court and to order access to the filed pretrial discovery material. I further conclude that the circuit court must exercise its discretion in determining whether to allow access to all, part or none of the pretrial discovery material that is filed. Judicial restriction on access to filed pretrial discovery material is valid, under the rules, when good cause is shown, including potential harm to commercial, economic, privacy or reputational interests of parties or nonlitigants and the possible prejudice to the parties' fair trial rights. Federal courts that have examined the analogous federal rules have reached conclusions similar to the ones I reach.[13]

¶ 42.   For the reasons set forth, I concur.

[13] *See, e.g., Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988); *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145–46 (2d Cir. 1987); *In re NASDAQ Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 351–54 (S.D.N.Y. 1996); *Hawley v. Hall*, 131 F.R.D. 578, 581–83 (D. Nev. 1990).