METROPOLITAN REHABILITATION
SERVICES, INC., Relator,

v.

Gladys WESTBERG, Director of Reha-
bilitation Services, Department of
Labor and Industry, Respondent.

No. C6–85–801.

Supreme Court of Minnesota.

May 2, 1986.

Douglas L. Skor, Gregory J. Stenmoe,
Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen.,
Harold Schultz, Sp. Asst. Atty. Gen., St.
Paul, for respondent.

KELLEY, Justice.

The Director of Rehabilitation Services,
Minnesota Department of Labor and Indus-
try, denied applications of Metropolitan Re-
habilitation Services, Inc. (MRS) and its
president, Dr. Phillip Haber, for registra-

tion as a qualified rehabilitation consultant (QRC). The denial was based on rules prohibiting a registered vendor of workers' compensation rehabilitation services, such as MRS, from simultaneous registration as a qualified rehabilitation consultant. On appeal, the Rehabilitation Review Panel granted Dr. Haber qualified rehabilitation consultant status conditioned upon compliance with rules barring any financial affiliation with a rehabilitation vendor firm such as MRS. The Workers' Compensation Court of Appeals affirmed. On certiorari, the sole issues are whether rules barring any financial relationship between Dr. Haber as a QRC and MRS as a vendor firm violate any constitutional rights of freedom of association for economic gain or of equal protection. We hold they do not, and affirm the decision of the Workers' Compensation Court of Appeals.

Following an amendment to the Workers' Compensation Act, the Commissioner of Labor and Industry in 1979 proposed rules governing rehabilitation services to injured employees. These proposed rules established a bifurcated system consisting of planners (denominated Qualified Rehabilitation Consultants) and providers of rehabilitation services (Registered Rehabilitation Vendors). The consultants were separated from the vendors to create a check-and-balance system designed to remove financial incentives for prescribing unnecessary and costly rehabilitation services. The aim of the bifurcated system was to cut costs and promote efficiency.

In general, insurers and employers favored the separation of the roles of consultant and vendor. However, Dr. Haber, founder and president of MRS, vigorously opposed the proposed rules. He not only personally expressed his views favoring a unitary, or integrated, rehabilitation system in which the same entity could both devise and provide rehabilitation services, but he also retained a lobbyist to advance these views at hearings on the rules.

Despite Dr. Haber's vigorous opposition, rules creating the bifurcated system were adopted in 1980.[1] Nevertheless, he continued his opposition to the rules by speaking on the issue on numerous occasions, by writing position papers, and by retaining an attorney to lobby the legislature on the "bifurcated provider problem."

Notwithstanding the adopted rules, in 1982 Dr. Haber applied for status as a qualified rehabilitation consultant on behalf of himself and his firm (MRS). At the time of this application, the relevant statute authorized the commission to approve rehabilitation consultants, but did not explicitly prohibit QRC-vendor status.[2] In 1983, over Dr. Haber's opposition, the legislature amended the Workers' Compensation Act to expressly prohibit a rehabilitation consultant from simultaneously serving as a rehabilitation vendor.[3]

---

1. Rule 5220.1300, subp. 3 (1983) provided:
   **Approval as a vendor or consultant.** An entity may be approved either to provide rehabilitation services as a vendor or to develop and monitor rehabilitation plans as a qualified rehabilitation consultant. These roles are distinct therefore a single entity shall not qualify for both functions. There shall be no ownership or financial relationships of any kind whatsoever between any vendor and consultant or organization approved for the employment of consultants.
   Rule 5220.1400, subp. 5 (1983) provided:
   **General criteria.** All persons who are qualified rehabilitation consultants shall be exclusively self-employed or exclusively employed by a single organization that is approved for the employment of qualified rehabilitation consultants or an employer/insurer.

2. Minn.Stat. § 176.102, subd. 10 (1982) then read:
   The commissioner shall approve rehabilitation consultants who may propose and implement plans if they satisfy rules promulgated by the commissioner for rehabilitation consultants. A consultant may be an individual or public or private entity.

3. After the Act of June 7, 1983, ch. 290, § 80, 1983 Minn.Laws 1310, 1354–55, the statute read:
   The commissioner shall approve rehabilitation consultants who may propose and implement plans if they satisfy rules *adopted* by the commissioner for rehabilitation consultants. A consultant may be an individual or public or private entity, *but may not be a vendor or the agent of a vendor of rehabilitation services.*
   Minn.Stat. § 176.102, subd. 10 (1984) (amendments underlined).

In 1983 the director denied the application for QRC status by Dr. Haber and MRS. Following the denial, the Workers' Compensation Court of Appeals ordered the Rehabilitation Review Panel to conduct an evidentiary hearing. At this evidentiary hearing, Haber reiterated his opposition to rules which prevented him from providing consultant services while affiliated with MRS as a vendor firm. The review panel approved Dr. Haber's application for QRC status, provided he disaffiliate himself from MRS. The panel denied QRC status to MRS. On appeal from the panel's determination, the Workers' Compensation Court of Appeals affirmed.[4]

In this court, Dr. Haber challenges the constitutionality of both the statute (Minn. Stat. § 176.102, subd. 10 (1984)) and the rules promulgated by the commissioner. Initially, he contended that the rules and statute which prohibited any financial relationship between a rehabilitation vendor and a qualified rehabilitation consultant violated his constitutional right of "freedom of association for economic gain." Subsequently, he challenged Minn.Stat. § 176.-102, subd. 10 (1984) under the equal protection clause of the federal and state constitution. *See* U.S. Const. amend. XIV, § 1, and Minn. Const. art. 1, § 2.[5]

■■■ 1. We first address Dr. Haber's "freedom of association for economic gain" claim. Although "freedom of association" is not mentioned in the text of either the federal or the state constitution, the Supreme Court of the United States, in certain circumstances, has recognized it as derivative of federal first amendment guarantees of free speech, press, petition, and assembly and protected by the due process clause. *See NAACP v. Alabama, ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (order compelling disclosure of membership of organization held unconstitutional violation of freedom of association). *See also Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) (rule barring voters in primary election of one political party from participating within 23 months in primary of another party held unconstitutional infringement on right of free political association). Relying on these two cases, Haber contends the state interest in discouraging unnecessary and costly use of rehabilitation services is insufficiently compelling to override his fundamental right of association. We disagree. Constitutional freedom of association protects the right of an individual to associate with others for the purpose of expressing and advancing ideas and beliefs. *See NAACP*, 357 U.S. at 460, 78 S.Ct. at 1170. The challenged statute and rules do not discourage Dr. Haber from associating with any persons to advocate his views on the workers' compensation rehabilitation system. Freedom of association does not extend to purely commercial group association. It is clear Haber's sole purpose of association with MRS is for financial gain. Therefore, it does not come under the umbrella of first amendment protection. In sum, Dr. Haber's contention that his first amendment association rights were violated is meritless.

This case does not involve a fundamental right or a suspect class. Thus, if there is a rational relationship between the statute and rules and a legitimate governmental

---

**4.** The Workers' Compensation Court of Appeals did not address Dr. Haber's challenge to the constitutionality of the director's rules or to Minn.Stat. § 176.102, subd. 10 (1984) because it felt it did not have jurisdiction to determine constitutional issues.

**5.** Shortly before oral argument, Dr. Haber substituted appellate counsel. His substituted counsel, over the state's objection, sought to file a supplemental brief raising equal protection arguments. Notwithstanding the objection, the attorney for the state addressed the equal protection argument and responded to questions from the court on the subject. The issue had previously been raised before the Rehabilitation Review Panel. Generally, if an appellant fails to assign error, no question is before this court for review. However, if a respondent voluntarily replies to an argument on an alleged error not assigned, the court may consider the question. *See, e.g., Erickson v. Mathwig*, 226 Minn. 55, 56, 31 N.W.2d 918, 919 (1948). After oral argument, the court agreed to consider the equal protection argument and accept supplementary briefs.

interest, they will be upheld as constitutional. *See Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983). *See also Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). The state's interest in reducing costs and removing financial incentives for prescribing unnecessary rehabilitation services provides a rational basis for enactment of the statute and promulgation of the rules.

■ 2. In support of his claim he was denied equal protection of the laws guaranteed by the federal and state constitutions, Dr. Haber focuses on three classifications created by the statute and the rules which he claims are discriminatory classifications. First, he points out the State Division of Vocational Rehabilitation, Regional Evaluation Center at Brainerd, was allowed to operate both as a consultant and vendor in violation of the rules. Second, two married couples, in which one spouse was a consultant while the other was a vendor, were allowed by the department to do workers' compensation rehabilitation work. Third, Dr. Haber contends that some qualified rehabilitation consultants practicing in the community advertised vendor services.

When the case does not involve a suspect class or a fundamental right, both parties agree the constitutional standard of review of an equal protection claim should be the rational basis test. *See Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). Relator argues, however, for a "more stringent" standard of rationality (or, in other words, more substantive review) under the Minnesota Constitution than the deferential federal standard of presumed rationality if a question is "at least debatable" as set forth in *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981).

In this case it is unnecessary to decide whether a "more stringent standard" of rationality, as advocated by relator, is applicable under Minn. Const. art. 1, § 2. Under any standard of review of an equal protection claim, certain rules apply. Stat-

utes, particularly those dealing with social or economic issues, carry a presumption of constitutionality, and it is not the role of the judiciary to question the factual accuracy or political wisdom of the reasoning and judgments underlying the legislative enactment. *AFSCME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 570 (Minn. 1983). *See also City of Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). A party challenging a statute, or a rule promulgated pursuant to statute, on constitutional grounds has the onus of demonstrating beyond a reasonable doubt that the statute violates a provision of the constitution. *McGuire v. C & L Restaurant Inc.,* 346 N.W.2d 605, 611 (Minn.1984). *See also Contos v. Herbst,* 278 N.W.2d 732, 736 (Minn.), *appeal dismissed sub nom., Prest v. Herbst,* 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979).

As relator concedes, if the federal "at least debatable" rationality test is applied, the statute—and the rules promulgated pursuant thereto—clearly demonstrate a legitimate state purpose.

The purpose of recent amendments to the Workers' Compensation Act was to control costs in the workers' compensation system. This purpose is expressed in the legislative intent section of the statute, Minn. Stat. § 176.001 (1984) which provides: "It is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of chapter 176." This provision was added to the statute in 1981. *See* Act of June 1, 1981, ch. 346, § 52, 1981 Minn.Laws 1611, 1641.

In 1983, the legislature passed another comprehensive reform of the Workers' Compensation Act. *See* Act of June 7, 1983, ch. 290, 1983 Minn.Laws 1310. The same bill which amended Minn.Stat. § 176.-102, subd. 10, to require separation between rehabilitation consultants and vendors, also added the following provision to the legislative intent section, Minn.Stat.

§ 176.001: "It is the specific intent of the legislature that workers' compensation cases shall be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' compensation legislation shall not apply in such cases." *Id.* § 25, 1983 Minn.Laws at 1324.

These statutory expressions of legislative intent show the lawmakers' "legitimate purpose" was to assure efficient delivery of workers' compensation services and to contain costs in so doing. It was reasonable for lawmakers to believe that separating consultants and vendors would help lessen the risk of over-prescription of services and thus contain costs. Therefore, in our view, Minn.Stat. § 176.102, subd. 10, easily passes constitutional scrutiny under the deferential federal standard. Moreover, under the allegedly "more stringent" Minnesota equal protection review, in *Loew v. Hagerle Bros.*, 226 Minn. 485, 33 N.W.2d 598 (1948), the statutes and the rules likewise pass constitutional muster.

 Relator Haber argues the classifications forbidding consultants to have a financial interest in a vendor are not uniformly applied with particular respect to the Brainerd DVR situation and the married couples.[6] This contention is without merit. The Brainerd DVR was allowed to operate as both consultant and vendor until 1983 because of an erroneous interpretation that it was exempt from the rules. After the attorney general advised that the Brainerd facility was not exempt, it withdrew as a registered vendor in May 1983. With respect to the married couple exemption, Haber and his corporation are not similarly situated. The public policy of the state, as reflected in legislative enactments against employment discrimination based on marital status, demonstrates the distinc-

tion. *See, e.g.,* Minnesota Human Rights Act, Minn.Stat. § 363.03 (1984).[7]

Because we conclude that relator's constitutional right of freedom of association or to equal protection of the laws under the Federal and Minnesota Constitution have not been violated, we affirm.

---

**6.** An exemption from the QRC/vendor prohibition for married couples and family members was added to the rules in 1984. *See* Minn.Rules 5220.1805(I).

**7.** Haber also contends other qualified rehabilitation consultants were providing vendor services in the form of work sampling. Suffice it to say, the Rehabilitation Review Panel found no merit to these allegations and there is nothing in the record to show this determination was erroneous.