**Mark P. WIEGEL, et al., Petitioners, Appellants,**

v.

**The CITY OF ST. PAUL, et al., Respondents.**

No. C6–00–2050.

Supreme Court of Minnesota.

Feb. 21, 2002.

Mark W. Gehan, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for Appellant.

Clayton M. Robinson, Jr., City Attorney, Gerald T. Hendrickson, Assistant City Attorney, St. Paul, for Respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, for amicus curiae League of MN Cities.

## OPINION

PAUL H. ANDERSON, Justice.

Appellants brought an action to compel respondents to disclose certain data in compliance with the Minnesota Government Data Practices Act (Data Practices Act).[1] The district court ordered that the city disclose the requested data and awarded attorney fees to appellants. However, the district court subsequently vacated the award of attorney fees when it became aware of a recently issued court of appeals opinion. Appellants then appealed the district court's decision to vacate the award of attorney fees. The court of appeals affirmed the district court, concluding that the district court was not authorized to make an award of attorney fees. We reverse and remand.

Appellants, Mark P. Wiegel, Gerald A. Simon, Allen J. Leopold, Saint Paul Police Federation, and Saint Paul Fire Fighters Local 21 (collectively appellants), brought this action to compel disclosure of certain data in compliance with the Data Practices Act. Respondents, City of Saint Paul and John C. Hamilton, Saint Paul's Director of the Office of Human Resources, were named as defendants in the action. The underlying facts of the case are as follows.

Wiegel, Simon, and Leopold took civil service promotional examinations given by the city. These examinations were administered under Hamilton's oversight. Wiegel, a police officer employed by the city, took the civil service promotional examination for police sergeant. This examination consisted of a written test, a videotape test, and an oral interview. During the interview, a panel of examiners asked several questions. Each panel member uses a document entitled "Notes" to record the

---

1. The Data Practices Act underwent minor changes and a slight recodification from 1999 to 2000, after this case began. None of the sections relied upon in this opinion underwent substantive changes and the new codification will be used.

examinee's rating and any additional information. Wiegel passed each part of the examination by a narrow margin and ended up as number 40 in line for a promotion to sergeant.

Simon and Leopold are also employed by the city—Simon as a fire fighter, Leopold as a fire equipment operator. Both took the civil service promotional examination for fire captain. This examination consisted of four tests: a written test, an "in-basket" test, a "simulator" test, and an oral interview. During the simulator test, an examinee's performance is recorded on audiotape for later evaluation. During the examiner's evaluation of the simulator audio tape and during the oral interview, a document similar to the "Notes" used in the police sergeant examination is used to score and rate each examinee's performance. Candidates must pass each test to be eligible for promotion. Simon failed the oral interview test and Leopold failed the simulator test.

After being notified of the results of his examination, Wiegel requested that the city provide him with the names and "Notes" of the two panel members who interviewed him as part of the oral interview. He suspected that one of the panel members was biased against him. The city refused Wiegel access to this data, although the names of the panel members were later voluntarily disclosed to him. Simon requested access to his panel members' "Notes." Leopold asked to review the audiotape of the simulator part of his examination and a document from the simulator test called "FIRE CAPTAIN SIMULATOR EXERCISE, Scoring Criteria." The latter is apparently the official title of

the "Notes" used in the rating process. The city refused to grant Simon and Leopold access to the requested data. In each instance, the city refused access to the requested data on the grounds that the data were confidential under policies established by the city and the Data Practices Act section governing examination data, Minn.Stat. § 13.34 (2000).[2]

The Saint Paul Police Federation, on behalf of its member Wiegel, requested an advisory opinion from the Minnesota Commissioner of Administration regarding whether the city was required to disclose the data requested by Wiegel. The commissioner's opinion noted that the data described by the city consisted of subjective evaluations of responses and additional comments, which were not the "tests, examination materials, or scoring keys" referred to under the examination data section of the Data Practices Act. The commissioner concluded that the data were private personnel data under Minn.Stat. § 13.43 (2000), not "examination data," and therefore available to the subject of those data.

After the commissioner's opinion was issued, Wiegel, acting through the Federation, and Simon and Leopold, acting through Saint Paul Fire Fighters Local 21, again requested the data in question from the city, citing the commissioner's opinion. The city again refused to grant access to the data.

After having been denied access to the data for a second time, Wiegel and the Federation commenced a civil action in Ramsey County District Court against the

---

**2.** We note that classification of these data as examination data under section 13.34 is problematic and might not have the effect desired by the city. In essence, under section 13.34, "[d]ata consisting solely of testing or examination materials, or scoring keys" are

classified as nonpublic. Minn.Stat. § 13.34. However, nonpublic data are defined in section 13.02, subd. 9, as data that are "accessible to the subject, if any, of the data." Minn. Stat. § 13.02, subd. 9 (2000).

city and Hamilton as its Director of Human Resources to compel it to grant access to the requested data. Similarly, Simon and Leopold, together with Local 21, brought a separate action against the city to compel it to grant access to the requested data. Because of the similarity of the two cases, the court consolidated the cases in the interests of judicial efficiency.

The facts were undisputed and the city and appellants both moved for summary judgment. The district court conducted an in camera examination of the requested data. After this examination, the court granted appellants' motion for summary judgment and ordered the city to provide to appellants all of the requested data except for the audiotape requested by Leopold. The court gave deference to the commissioner's opinion and concluded that "[t]he [c]ity is without authority to render unavailable to the examinee that which the Data Practices Act requires to be available to the examinee." It is not clear from the order what part of the Act the court relied upon to support releasing the data or what classification governed access to the data. In its order, the court granted judgment for costs and disbursements and specifically awarded reasonable attorney fees to appellants as "aggrieved person[s]" under the Act. But the court, in a second amended order, later vacated that part of its order awarding reasonable attorney fees in response to *Washington v. Independent School Dist. No. 625*, 610 N.W.2d 347 (Minn.App.2000). *Washington* is a court of appeals case in which the opinion was released on the same day as the district court's original order in *Wiegel*. *Washington* held that "aggrieved" under the Act means a person entitled to data as a matter of right. 610 N.W.2d at 349. The district court did not detail why it concluded that *Washington* prevented an award of attorney fees; it only stated that the "award of attorneys fees is inappropriate in light of *Washington*."

Appellants appealed the district court's decision vacating the award of attorney fees, arguing that *Washington* was inapplicable because the district court found that the data in question were "private data on individuals" to which appellants were entitled as a matter of right. The court of appeals affirmed, concluding that the district court's order classified the data as "examination data," which the city had discretion to withhold under certain circumstances, and were therefore not data to which appellants were entitled as a matter of right. On appeal to this court, appellants raise the same questions as they did before the court of appeals, arguing that under the district court's order they were entitled to the requested data as a matter of right, and therefore *Washington* does not prevent the award of attorney fees.

I.

The issues presented in this case involve an examination of a district court's grant of summary judgment on undisputed facts and an interpretation of the Data Practices Act. When a district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that is reviewed de novo. *Lefto v. Hoggsbreath Enter., Inc.*, 581 N.W.2d 855, 856 (Minn.1998). Similarly, statutory construction is a question of law, which we review de novo. *State v. Ambaye*, 616 N.W.2d 256, 258 (Minn.2000).

This case involves interpretation of the Data Practices Act, a complex and technical chapter of the Minnesota Statutes. Therefore, it is helpful to our analysis if we begin with a brief overview of the key provisions of the Act applicable to this case. The Act "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in

state agencies, statewide systems, and political subdivisions." Minn.Stat. § 13.01, subd. 3 (2000). The Act operates through a system of classification and how the data are classified ultimately determines who has access to the data.

Most government data are first classified into one of two broad categories: "data on individuals" or "data not on individuals." Minn.Stat. § 13.02, subds. 4, 5 (2000). Each of these categories is further divided into three subclasses. Data on individuals are divided into "public data on individuals," "private data on individuals," and "confidential data on individuals." Minn.Stat. § 13.02, subds. 3, 12, 15 (2000). Similarly, data not on individuals are divided into three parallel subclasses: "public data not on individuals," "nonpublic data," and "protected nonpublic data." Minn. Stat. § 13.02, subds. 9, 13, 14. (2000). Generally, "public data" are accessible to the public. Minn.Stat. § 13.02, subds. 14, 15. "Private data on individuals" and "nonpublic data" are generally not accessible to the public, but are accessible to the subject of the data. Minn.Stat. § 13.02, subds. 9, 12; *see also* Minn.Stat. § 13.04, subd. 3 (2000) (allowing the person who is the subject of public data on individuals or private data on individuals to have access to such data). This second parallel tier of data subclasses is most relevant to this case. Lastly, "confidential" and "protected nonpublic data" are generally not accessible to either the public or the subject of the data. Minn.Stat. § 13.02, subds. 3, 13.

The Data Practices Act consists of numerous sections that attempt to sort all government data into the above-defined categories. *See* Minn.Stat. § 13.32–.99 (2000). These sections include but are not limited to provisions on the classification of educational data, examination data, federal contracts data, medical data, and personnel data. *Id.* Generally, these sections and their attendant classifications control whether and how a government entity provides access to data it collects.

Government officials must routinely interpret and apply the many provisions of the Data Practices Act; therefore, it is likely that disagreements will arise regarding the proper classification of data. The legislature has recognized this potential for disagreement and provided two important mechanisms, both administrative and judicial, for parties to appeal government determinations regarding data. First, if a person disagrees with the government's determination regarding data practices, that person may request a written opinion from the Commissioner of the Department of Administration regarding the person's rights and access to the data. Minn.Stat. § 13.072, subd. 1(a) (2000). The legislature has indicated that these written opinions must be given deference by a court in a proceeding involving the data. *Id.*, subd. 2 (2000).

Second, persons seeking access to data may bring a court action against the governmental entity in control of the data. Minn.Stat. § 13.08, subds. 1–4(a) (2000). Specifically, a person may bring an action for damages for violation of the Data Practices Act, an action to enjoin practices that violate the Act, or an action to compel compliance with the Act. Minn.Stat. § 13.08, subds. 1, 2, 4(a). Importantly, when bringing an action to compel compliance, an "aggrieved person * * * may recover costs and disbursements, including reasonable attorney's fees." Minn.Stat. § 13.08, subd. 4(a). The recovery of attorney fees is not mandated by the Act and remains within the discretion of the court. *Id.* (stating that aggrieved persons "*may recover*" attorney fees) (emphasis added). Here, the ultimate issue is whether appellants were aggrieved persons within the meaning of the Act and therefore poten-

tially able to recover attorney fees. Unfortunately, "aggrieved person" is not defined in section 13.08 or elsewhere in the Act. Further, at the time the district court first addressed this issue, neither this court nor the court of appeals had addressed the definition of aggrieved person in the context of the Act. However, on the same day that the district court entered its first order, the court of appeals addressed this issue in *Washington*. It was the court of appeals' decision in *Washington* that prompted the district court to later vacate the award of attorney fees made in its first order.

In *Washington*, the court of appeals began its analysis of section 13.08 by specifically rejecting an interpretation of "aggrieved" to mean simply "prevailing." *Washington*, 610 N.W.2d at 349. The court concluded that to be aggrieved, a person must satisfy the common and approved usage of the term. *Id.* According to the court, "[t]he common usage of 'aggrieved' is '[t]reated wrongfully,' or 'offended,' 'as by denial of or infringement upon one's legal rights.'" *Id.* (quoting the American Heritage Dictionary of the English Language 34 (3d ed.1992)). The court then applied this definition to the facts in *Washington*, noting that the requested data were only accessible to the subject of the data by court order under Minn.Stat. § 13.39 (2000).[3] *Washington*, 610 N.W.2d at 349. The court then concluded that the subject's rights were not

infringed upon because he was not entitled to access to the data outright, but instead was required to obtain a court order to obtain access to the data. *Id.* Thus, in *Washington* the subject of the data was not entitled to the data as a matter of right, and therefore not an aggrieved person under Minn.Stat. § 13.08, subd. 4(a). *Washington*, 610 N.W.2d at 349–50.

We agree with much of the reasoning used by the court of appeals in *Washington*. We reject an interpretation of "aggrieved" to mean simply "prevailing." The common and approved definition of aggrieved is to be "[t]reated wrongly," "offended," or "[t]reated unjustly, as by denial of or infringement upon one's legal rights." American Heritage Dictionary of the English Language 34 (3d ed.1992). A person may be wronged, offended, or have one's legal rights infringed upon by a government violation of the Data Practices Act. Further, a person may (1) recover damages resulting from a violation of the Act, (2) enjoin government practices or proposals which violate the Act, or (3) compel the government to comply with the Act. Minn.Stat. § 13.08, subds. 1–4. The government may violate the Act when it improperly denies persons access to certain classifications of data.

▪ The Act specifically sets up classifications of data to which certain persons are entitled to access as a matter of right. *See, e.g.*, Minn.Stat. § 13.02, subd. 12 (de-

---

**3.** Section 13.39 provides that data gathered by the government in anticipation of defending a civil action are classified as "protected nonpublic data." Minn.Stat. § 13.39, subd. 2(a). As noted above, protected nonpublic data are ordinarily not accessible to the subject of the data, but section 13.39 allows a person to bring an action in district court to compel disclosure of these data when a civil action is pending. *Id.*, subd. 2(a) (2000). When a civil action is determined to be pending, the court *may* order disclosure of these

protected nonpublic data if it determines that the benefits of disclosure outweigh the harm of disclosure. *Id.* Thus, the subject of data classified as protected nonpublic under section 13.39 may eventually obtain access to such data. However, the subject is not entitled to these data *as a matter of right* under the Data Practices Act because the subject is only entitled to access to these data after a court balances the risks and benefits in the subject's favor and orders disclosure of those data.

fining private data on individuals as data to which the individual subjects are entitled to have access); Minn.Stat. § 13.04, subd. 3 (giving individual subjects of private data access to the data as a matter of right upon proper request). Such a person is wronged—and therefore aggrieved—when the government refuses to grant access to data to which the person is entitled as a matter of right under the Act. However, it is important to note that sometimes a person can prevail in a legal action by obtaining access to data, but not be aggrieved by the government's action because the data were not available to the person as a matter of right—as was the case in *Washington*. 610 N.W.2d at 349. In *Washington*, the person was ultimately entitled to gain access to certain data, but not as a matter of right because he was first required by the Act to get a court order before obtaining access to the data. *Id.* Therefore, we hold that when the government violates the Act by improperly denying a person access to data that the government is required by the Act to make available—that is, refuses to grant access to data that is available as a matter of right—the person denied access is an "aggrieved person" under section 13.08, subd. 4(a).

## II.

■ Having determined the definition of "aggrieved person," we next apply this definition to the facts of the case before us. Here, appellants were denied access to data by the city. Therefore, we must determine whether the city violated the Data Practices Act as to appellants—that is, were appellants entitled to access to these data as a matter of right? Whether appellants were entitled to these data as a matter of right depends upon how the requested data are classified under the Act. The district court addressed this issue in its order granting appellants' summary judgment motion and ordering disclosure of the requested data. The validity of the court's classification of the requested data was not appealed by either party.[4] Instead, the issue appealed was whether appellants were aggrieved persons under section 13.08, subd. 4(a). However, whether appellants were aggrieved persons turns on the data's classification under the Act. Therefore, we must determine how the court classified the requested data before we can determine whether appellants were aggrieved persons. Once we properly interpret the court's order, we can then use the court's classification in our analysis.

As noted above, the district court did order disclosure of the requested data, but in doing so it did not make clear its classification of the data. As previously noted, the court's classification is crucial because it determines who has access to the data. More particularly, the classification determines whether appellants were entitled to the data as a matter of right. Several important details lead us to conclude that the court classified the requested data as private data on individuals—data that are generally accessible to the subject of those data as a matter of right. Minn.Stat. § 13.02, subd. 12. First, in its order requiring disclosure of the requested data, the court apparently deferred to and adopted the commissioner's advisory opinion. Then the court noted that the advisory opinion concluded that the requested data were "private data." In fact, the advisory opinion noted that the requested data were private data under section 13.43.

---

4. Even though the district court's classification of the data was not appealed by either appellants or respondents, both parties disagree on what classification the district court actually made in its order.

Section 13.43 governs personnel data and it appears that the commissioner treated the default classification for personnel data as private data on individuals. *See* Minn. Stat. § 13.43, subd. 4. Private data on individuals must be made available to the subject(s) of the data—here, Wiegel, Leopold, and Simon. Minn.Stat. § 13.02, subd. 12. Finally, the court concluded that the city was "without authority to render unavailable to the examinee that which the Data Practices Act requires be available to the examinee."

Although the district court did not specifically label or identify the classification of the requested data, the court's classification of the data as private data on individuals is evident.[5] Here, the only conclusion that can be drawn after a close reading of that part of the order addressing the requested data is that the court, giving deference to the commissioner's advisory opinion, concluded the requested data were private data on individuals. We therefore conclude that the requested data were classified by the district court as private data on individuals.

Under the Data Practices Act, the individual subjects of private data on individuals are entitled to access to such data as a matter of right upon request. Minn.Stat. § 13.04, subd. 3. Here, appellants properly requested access to private data on individuals, but were denied access to such

data by the city. The city violated the Act by withholding private data on individuals from appellants. Thus, appellants are "aggrieved persons" under Minn.Stat. § 13.08, subd. 4(a). As "aggrieved persons" under section 13.08, subd. 4(a), they *may* be awarded reasonable attorney fees by the district court.

■ Our conclusion that appellants are aggrieved persons does not resolve the ultimate issue of whether they are to be awarded attorney fees. An award of reasonable attorney fees is not required by the statute and the decision whether to award fees lies within the discretion of the district court. Minn.Stat. § 13.08, subd. 4(a) (stating that "any aggrieved person * * * *may* recover costs and disbursements, including reasonable attorney's fees, as determined by the court.") (emphasis added). In this case the district court first made an award of attorney fees to appellants, but later vacated that award because the court believed that the award was "inappropriate" after the *Washington* decision. Apparently, when the court vacated its first order, it believed that it was unable to make an award of attorney fees to appellants after *Washington* because appellants did not meet the definition of aggrieved persons. Under the rule we articulate today, appellants are "aggrieved persons" and may be awarded attorney fees under Minn.Stat. § 13.08, subd. 4(a).

**5.** Some ambiguity regarding the data's classification is created by that part of the district court's order regarding prospective relief. Appellants requested prospective relief regarding access to similar data in the future, and the court specifically addressed this request in its order. The prospective relief part of the order engenders ambiguity because it uses language taken from the examination data section of the Data Practices Act, section 13.34, and does not refer to personnel data or private data on individuals. This part of the order is also ambiguous because the court, on the one hand, concluded that a specific kind of data—the requested data—were private and therefore could not be withheld by the city, but, on the other hand, concluded that in the future this same kind of data may be withheld by the city. Nevertheless, this appeal does not involve that part of the order granting prospective relief and we have restricted our analysis to that part of the order granting appellants access to the requested data. The prospective relief part of the order is separate from the court's conclusions regarding the requested data and does not alter the court's basic conclusion regarding the requested data.

Therefore, because the district court erred in its application of the law when it denied attorney fees, we remand to allow that court, in its discretion, to consider an award of reasonable attorney fees to appellants.

Reversed and remanded.

BLATZ, C.J, took no part in the consideration or decision of this case.