**In the Matter of GLAXOSMITHKLINE PLC.**

No. A04–2150.

Court of Appeals of Minnesota.

April 18, 2006.

Mike Hatch, Attorney General, Michael J. Vanselow, Deputy Attorney General, Paul B. Civello, Assistant Attorney General, St. Paul, MN, for appellant State of Minnesota.

Michael A. Lindsay, Dorsey & Whitney LLP, Minneapolis, MN; and Sara D. Schotland (pro hac vice), Cleary Gottlieb Steen & Hamilton, Washington, D.C., for respondent GlaxoSmithKline plc.

William F. Mohrman, Mohrman & Kaardal, Minneapolis, MN, for amicus curiae Pharmaceutical Research and Manufacturers of America.

Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and RANDALL, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the district court's denial of its motion disputing respondent's claims of confidentiality as to certain documents produced by respondent pursuant to appellant's civil investigatory demand. Because we find that the terms of a protective order and a confidentiality agreement provide appellant with the right to challenge such designations, because the documents are not protected from disclosure under Minn.Stat. § 13.39 (2004), and because First Amendment protections do not prevent disclosure of the documents, we reverse and remand.

## FACTS

On May 30, 2003, appellant Minnesota Attorney General (the state) served a civil investigatory demand (CID) on respondent GlaxoSmithKline plc (GSK) pursuant to Minn.Stat. § 8.31, subd. 2(a) (2004). The CID alleged that GSK "has combined or conspired . . . to refuse to supply prescription drugs to Canadian pharmacies engaged in the sale of GSK's drugs to Minnesota purchasers," in violation of the Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.51, 325D.53, subds. 1(1), (3) (2002). The CID requested documents and information related to the sale of GSK drugs in Canada and the means used by GSK to monitor purchases by Minnesota consumers at Canadian pharmacies.

Before producing materials requested by the CID, GSK demanded that the parties enter into a confidentiality agreement (the agreement). According to the agreement, GSK had the right to initially designate documents as confidential, and the state could challenge such designation. Once the parties signed the agreement on August 4, 2003, GSK began producing documents. However, discovery disagreements arose, and in May 2004, the district court granted the state's motion to compel GSK to comply with the CID. Subsequently, GSK designated some documents as privileged under the First Amendment. GSK offered to voluntarily produce 1,000 allegedly privileged documents if the state agreed to enter into a protective order. The parties negotiated

a proposed order (the order), which the district court adopted on July 10, 2004. It largely mirrored the language of the agreement. Although GSK voluntarily produced numerous documents, certain others were in dispute. After an in camera review of 120 documents, the district court required GSK to produce only a small portion of the disputed documents.

In September 2004, the state moved the district court to declare that 44 documents stamped as "confidential" by GSK were not confidential. GSK opposed the motion, arguing that the documents were confidential under the agreement and the order, were nonpublic investigative data under the Minnesota Government Data Practices Act and contained communications protected by the First Amendment. After a hearing on the state's motion, the state delivered to the district court a copy of the complaint in an antitrust action the state intended to file in Ramsey County District Court against GSK. The complaint refers to, quotes, and attaches many of the documents contested at the motion hearing. On October 13, 2004, the district court denied the state's motion to declare that such documents were not confidential.

The state took two routes to appeal the October 13 order. First, the state filed a petition for discretionary review, which this court denied on December 7, 2004. Second, the state filed an appeal as of right, which this court dismissed for lack of appellate jurisdiction on December 21, 2004. The Minnesota Supreme Court granted further review of both orders. Meanwhile, the state finished its investigation of GSK and filed an antitrust complaint in Ramsey County District Court. On July 14, 2005, the supreme court reversed this court's dismissal of the state's appeal as of right and remanded. *In re Glaxosmithkline plc,* 699 N.W.2d 749 (Minn.2005). The state's appeal now comes before this court on remand.

## ISSUES

1. Do the agreement and the order permit the state to challenge GSK's confidentiality designations?

2. Does the Minnesota Government Data Practices Act prohibit the state from disclosing the documents received from GSK?

3. Is there a First Amendment right that protects the confidentiality of the documents?

## ANALYSIS

Because the factual basis of the confidentiality of any specific document is not before us, this appeal addresses legal, not factual, disputes. "A *de novo* standard of review is used to determine whether the district court erred in its application of the law." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn. 1997); *see also Wiegel v. City of St. Paul,* 639 N.W.2d 378, 381 (Minn.2002) (reviewing statutory interpretation de novo).

### I.

The first issue is whether the district court correctly interpreted the agreement and the order as precluding the state's challenge to the GSK confidentiality designation. "There is a presumption in favor of a common-law right of access to civil court records." *State ex rel. Humphrey v. Philip Morris Inc.,* 606 N.W.2d 676, 686 (Minn.App.2000), *review denied* (Minn. Apr. 25, 2000). But in a complex case an umbrella protective order can serve an important purpose and facilitate discovery. *Id.* (noting that protective orders can be appropriate if "based on the producing party's good-faith assertion that [documents] are confidential"). The terms of a contract (and a stipulated order) are

given their plain and ordinary meaning. *See Metro. Sports Facilities Comm'n. v. Gen. Mills, Inc.*, 470 N.W.2d 118, 123 (Minn.1991) (discerning the intent of the parties from the plain language of the agreement).

■ Here, the district court found that both the agreement and the order contained a commitment by the state to protect as confidential all information produced. The agreement and the order provide that GSK can designate as confidential any trade secret under Minn.Stat. § 13.37, subd. 1(b) (2002), or any document that could be the subject of a protective order under Minn. R. Civ. P. 26.03. However, the agreement and the order further state that if GSK designates a document as confidential, the state can object to such designation by giving GSK ten days' notice, at which time GSK can file a motion to prevent disclosure.[1]

GSK produced more than 1,000 allegedly privileged documents pursuant to the terms of the agreement and order. The state agreed to respect and preserve the confidentiality of all documents whose designation it did not challenge. As the Minnesota Supreme Court stated, "The district court's conclusion that the state's request was precluded by the Protective Order or the Confidentiality Agreement does not consider that both documents specifically authorized the state to object to GSK's confidentiality designations and to seek district court review." *In re Glaxosmithkline plc*, 699 N.W.2d at 755–56 n. 3. While this statement was not essential to the supreme court's decision, we find it persuasive that its interpretation of the discovery agreements mirrors our own.

■ GSK argues in the alternative that the state implicitly waived the right to contest the confidentiality of the documents, notwithstanding the plain language of the agreement and the order. Generally, a party who cooperates with discovery because it has received assurances that information would be kept secret has a reliance interest that the court will protect.

> Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. It is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.

*Bauer v. Blackduck Ambulance Ass'n*, 614 N.W.2d 747, 749 (Minn.App.2000) (quotation omitted).[2]

In *Bauer*, this court reasoned that when an employee held herself out as an employee by accepting workers' compensation benefits, she could not later rescind her employee status to also sue in tort. *Id.* at 750. *Bauer* is distinguishable. Unlike the employee in that case, the state has not taken contrary positions in this case. The language of the agreement and the order simply states that the state will not disclose any documents unless it has reason to question the claim to confidentiality.

We conclude that the state is not estopped from challenging the confidentiality designations made by GSK. The state made a discrete challenge to a select body of documents, as provided under the terms

---

1. It does not appear that the notice/motion procedure was followed in this dispute. However, GSK has not raised this issue and, under the circumstances, it does not appear GSK was prejudiced by the state's taking the initiative to file the motion.

2. We also note that application of the judicial-estoppel doctrine is not expressly recognized in Minnesota. *See State v. Larson*, 605 N.W.2d 706, 713 n. 11 (Minn.2000); *Johnson v. Wright*, 682 N.W.2d 671, 681 (Minn.App. 2004).

of both the agreement and the order. The district court erred as a matter of law by declaring that the state had no right to challenge the designation.

## II.

■■■ The second issue is whether the district court properly interpreted the provisions of the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. §§ 13.01–.90 (2004).[3] The MGDPA is generally a law of access. It "establishes a presumption that government data are public and are accessible by the public." Minn.Stat. § 13.01, subd. 3. Yet the MGDPA identifies certain types of nonpublic data. *See* Minn.Stat. § 13.39. The MGDPA "attempts to reconcile the rights of data subjects to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing. The act also attempts to balance those competing rights within a context of effective government operation." *Itasca County Bd. of Comm'rs v. Olson,* 372 N.W.2d 804, 807 (Minn.App.1985) (quotation omitted). The statute is intended to benefit the government, protecting specific kinds of data until the government entity finishes its investigation and decides whether to file a civil action.

GSK argues that the MGDPA prohibits the release of active investigative data in pending civil actions. *See* Minn.Stat. § 13.39, subd. 3. At the outset, we note that this argument is difficult to press because courts have found that the legislature enacted section 13.39 "to prevent government agencies from being at a continual disadvantage in litigation by having to prematurely disclose their investigative

work product to opposing parties or the public." *Star Tribune v. Minn. Twins P'ship,* 659 N.W.2d 287, 298 (Minn.App. 2003). However, we also recognize that this statement was made in the context of litigation by a newspaper to obtain data and is not determinative of claims by a party seeking to keep data from being disclosed.

### A. Minn.Stat. § 13.39, subd. 2.

■ The MGDPA provides that "data collected by state agencies, political subdivisions, or statewide systems as part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action, are classified as protected nonpublic data." Minn.Stat. § 13.39, subd. 2. The MGDPA defines protected nonpublic data as information which by state or federal law is neither public nor "accessible to the subject of the data." Minn.Stat. § 13.02, subd. 13. Under this definition, the documents produced by GSK cannot be classified as protected nonpublic data. This is because GSK provided the state with the documents; GSK, as the subject of the documents, obviously had access to them.

■■■ In addition to the accessibility basis for disclosure, the state points out that the law allows it (the state) to disclose protected nonpublic data if it (the state) determines that any of three factors is applicable. *See* Minn.Stat. § 13.39, subd. 2. The state argues that the district court erred by not recognizing the state's discretion and in not considering the factors. *See* Minn.Stat. § 13.39, subd. 2. The factors are "aid the law enforcement process,

---

**3.** In discussing this issue, we only consider whether the MGDPA protects government data from disclosure as presented in this case. We do not consider the relationship between

the provisions of the MGDPA and other bases for confidentiality, including claims of trade secrets and confidentiality agreements.

promote public health or safety or dispel widespread rumor or unrest." *Id.* The MGDPA plainly gives discretion to the governmental entity conducting the investigation to decide whether one of those factors justifies the disclosure. *See id.* We note that the state agency is the party that the legislature intended to protect from constant and untimely disclosure. *See Wiegel,* 639 N.W.2d at 383 n. 3; *Star Tribune,* 659 N.W.2d at 298.

We conclude the district court erred when it determined that the documents are "protected nonpublic data" under Minn.Stat. § 13.39, subd. 2, and when it determined that the state lacked the authority to make the documents public, if the conditions in subdivision 2 were met.

**B. Minn.Stat. § 13.39, subd. 3.**

▆ The district court applied subdivision 3 to bar the state's motion for disclosure. Among other provisions, that subdivision states that active civil investigative data which are nonpublic may become public if the data are "made part of a court record." Minn.Stat. § 13.39, subd. 3. The state argued that by filing a summons and complaint and by referring to the documents at issue in and attaching them to the complaint, the documents became part of a court record and, therefore, public. *See* Minn.Stat. § 13.39, subd. 3. The district court disagreed.

▆ This court must determine whether the documents constitute court records because they are exhibits to pleadings. "Generally, private documents generated during discovery that are not filed with the court are not considered 'judicial records.'" *Star Tribune,* 659 N.W.2d at

296. The common-law presumption of access only extends to documents that have been filed with the court. *Id.* "Although the case law refers to a common law presumption that the public and media may inspect judicial records, generally that presumption extends only to documents which have been filed with the court such as pleadings and settlement agreements." *State ex rel. Mitsubishi Heavy Indus. Am., Inc. v. Cir. Ct.,* 233 Wis.2d 1, 11–12, 605 N.W.2d 868, 874 (Wis.2000) (citations omitted) (cited with approval in *Star Tribune,* 659 N.W.2d at 296). Documents that may otherwise be considered active civil-investigative data would lose their confidential status upon the filing of a contested case with the Office of Administrative Hearings. *Westrom v. Minn. Dep't of Labor & Indus.,* 686 N.W.2d 27, 36 (Minn. 2004). We conclude that once the state filed its pleadings in this case, they become "court records" and that under section 13.39, subdivision 3, any active civil-investigative data that are part of the pleadings, including exhibits, became public.

**III.**

▆ The final issue is whether the district court erred as a matter of law in finding that the First Amendment protected the documents in question from disclosure. Minn. R. Civ. P. 26.03 allows a party to move, with good cause, for a protective order. This First Amendment claim by GSK was brought under this rule.[4]

**A. Petitioning Activity**

▆ The right to petition one's government is a protected right under the First

---

4. The Fourteenth Amendment makes First Amendment protections applicable against the states. *Bloom v. O'Brien,* 841 F.Supp. 277, 279 (D.Minn.1993) (citing *Douglas v. City of Jeannette,* 319 U.S. 157, 162, 63 S.Ct. 877, 880, 87 L.Ed. 1324 (1943), and *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 547, 95 S.Ct. 1239, 1241, 43 L.Ed.2d 448 (1975)).

Amendment.[5] "It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139, 81 S.Ct. 523, 530, 5 L.Ed.2d 464 (1961). This right extends equally to corporate citizens as it does to private citizens. *Senart v. Mobay Chem. Corp.*, 597 F.Supp. 502, 506 (D.Minn.1984).

 Here, GSK asserts that documents that were prepared as part of exercising its petitioning rights are privileged from disclosure by the First Amendment. GSK contends that the *Noerr–Pennington* doctrine establishes that concerted petitioning activity is not an antitrust violation. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669–70, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965); *Noerr Motor Freight*, 365 U.S. at 138–40, 81 S.Ct. at 530–31. GSK argues that this logic provides protection against unwanted disclosure of the documents in question. However, as the Minnesota Supreme Court already noted in this case, "the conclusion that there is a First Amendment privilege for 'petitioning documents' is not clearly recognized in case law." *In re Glaxosmithkline plc*, 699 N.W.2d at 756 n. 3.

In the federal courts, this claim of protection against disclosure has been rejected. *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir.1981) (finding that "[t]here is no authority for fitting the *Noerr–Pennington* doctrine into the 'privilege' exception" under Fed.R.Civ.P. 26); *see Associated Container Transp. (Austl.) Ltd. v. United*

*States*, 705 F.2d 53, 59 (2d Cir.1983) (holding that a company could not invoke *Noerr–Pennington* doctrine as a basis for withholding materials sought through a CID issued by the U.S. Department of Justice). Thus, *Noerr–Pennington* does not provide a discovery privilege. We conclude that it also does not prevent the disclosure of documents GSK supplied related to contacts with governmental entities absent a clear showing that the standard for protection of associational activity is met. The district court erred as a matter of law in finding that a petitioning privilege prevented disclosure of the documents.

**B. Associational Activity**

 GSK also asserts that a privilege based on its First Amendment associational privacy rights protects the documents from disclosure. "Constitutional freedom of association protects the right of an individual to associate with others for the purpose of expressing and advancing ideas and beliefs." *Metro. Rehab. Servs., Inc. v. Westberg*, 386 N.W.2d 698, 700 (Minn.1986). "One of those precious associational freedoms is the right of 'like-minded persons to pool their resources in furtherance of common political goals.' " *Minn. Fifth Cong. Dist. Indep.-Republican Party v. State ex rel. Spannaus*, 295 N.W.2d 650, 652 (Minn.1980) (quoting *Buckley v. Valeo*, 424 U.S. 1, 22, 96 S.Ct. 612, 636, 46 L.Ed.2d 659 (1976)). Minnesota courts will fashion discovery relief, in the form of a protective order, to protect the freedom of association. *See, e.g., Eilers v. Palmer*, 575 F.Supp. 1259 (D.Minn. 1984); *Caucus Distribs., Inc. v. Comm'r of Commerce*, 422 N.W.2d 264, 267–68 (Minn.

---

**5.** "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; *or the right of*

*the people peaceably to assemble, and to petition the Government for a redress of grievances."* U.S. Const. amend. I (emphasis added).

App.1988), *review denied* (Minn. June 10, 1988); *State v. Colonna,* 371 N.W.2d 629 (Minn.App.1985).

 The overarching purpose of the First Amendment is to protect the expression of ideas, not elevate privacy to handicap public expression. *St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schools,* 332 N.W.2d 1, 7 (Minn.1983) (holding that the Open Meeting Law does not violate the rights of free speech or free assembly). The state argues that First Amendment protections do not extend as a shield to keep unlawful activity in the dark. "Freedom of association permits individuals to associate for *lawful purposes* and provides a right to join with others to pursue goals independently protected by the First Amendment." *United States v. Wilson,* 154 F.3d 658, 665 (7th Cir.1998) (quotation omitted) (emphasis added). In addition, associating purely for financial gain does not come under the umbrella of First Amendment protection. *Metro. Rehabilitation Servs.,* 386 N.W.2d at 700.

GSK asserts that disclosing the documents would have a chilling effect on its ability to freely associate. Associational privacy has been elevated over disclosure when there is a group that has been an object of harsh retaliation and disclosure is not just embarrassing, but threatening to the personal safety, if not very survival, of its members. *See NAACP v. Ala.,* 357 U.S. 449, 462–63, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). Resolution of such a claim of privacy requires that a court balance the right against the state's interest in publicly prosecuting violations of its antitrust laws. *See Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 205–06 (Minn.1986) (balancing interests and denying access to settlement documents to protect individual litigants from further intrusion into private matters). Clear and compelling circumstances must exist to shield associational privacy from disclosure.

There is no evidence on the record before us to substantiate the claim that the proposed public disclosure would interfere with the associational rights of GSK or subject GSK and the firms with which it may be associated to discrimination or retaliation. The bald assertion that interference will occur is not adequate. We determine that the district court abused its discretion in prohibiting disclosure on this ground.

GSK also asserts that the documents are privileged to protect the privacy interests of third parties. A number of the documents that GSK produced to the state were created by PhRMA,[6] for members of its association. However, for the same reasons this court declines to find such a privilege for GSK, we also decline to find one for PhRMA. The record is devoid of any evidentiary support for such a position.

The district court did not determine specifically which documents were protected under either the alleged petitioning or associational privileges. Neither party cites any authority for the proposition that documents and communications made under the auspices of, or as a result of, exercising a First Amendment right are confidential and protected from disclosure. The district court erred as a matter of law by creating a blanket privilege under the First Amendment.

## DECISION

We conclude that the state had the right to challenge GSK's confidentiality designa-

---

**6.** Pharmaceutical Research and Manufacturers of American (PhRMA) is an amicus curiae in this matter.

tions under the plain language of both the agreement and the order. Moreover, nothing in the Minnesota Government Data Practices Act precludes disclosure in this case of otherwise nonconfidential documents. Finally, the First Amendment does not prevent disclosure of the documents at issue. Accordingly, we reverse and remand for a determination of which documents may be released pursuant to the agreement and order, the only surviving basis for nondisclosure.

**Reversed and remanded.**